IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BAIRD & WARNER RESIDENTIAL SALES, INC., an Illinois corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 04 C 6788 ) ) Judge Joan H. Lefkow |
| CENDANT MOBILITY SERVICES, INC., a Delaware corporation, | ) ) ) Magistrate Judge Keys |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This four-count complaint for breach of contract was removed from the Circuit Court of Cook County. Plaintiff, Baird & Warner Residential Sales, Inc. ("Baird & Warner"), complains that defendant, Cendant Mobility Services, Inc. ("Cendant"),[1] breached the parties' Strategic Alliance Agreement by, among other things, failing to follow through on a promise to give Baird & Warner a certain percentage of referrals of Cendant's business. Baird & Warner has now moved for partial summary judgment that Cendant is liable on two claims for breach of contract (Counts I and II of the amended complaint). Cendant has cross-moved, seeking judgment in its favor on Count III. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Baird & Warner is an Illinois corporation with its principal place of business in Illinois; Cendant is a Delaware corporation with its principal place of business in Connecticut; and the amount in controversy exceeds $75,000. For the reasons that follow, Baird & Warner's motion [# 89] is denied and Cendant's motion [# 92] is granted.

---

[1] Cendant changed its name to Cartus Corporation in 2006, but for the sake of consistency, the court will refer to it as Cendant in this opinion.

**I.     Facts**

Baird & Warner is a real estate brokerage company located in the Chicago area. Cendant's Local Rule 56.1(a)(3) statement of facts, Dkt. No. 93 ("Cendant's statement"), at ¶ 2. Cendant is a company that offers employee relocation and related services to corporate and government employers worldwide, including services related to buying and selling homes. Cendant's statement, at ¶ 5. In addition, Cendant provides services to affinity membership groups, such as credit unions, veterans' groups, automobile associations, and airline frequent flyer groups ("Affinity groups"). Cendant's statement, at ¶ 6. To facilitate these services, Cendant has maintained contractual relationships with a broad network of real estate brokerage firms, which provide various kinds of real estate services in contractually-specified geographic areas (the "Mobility Network"). Cendant's statement, at ¶ 9.

Cendant's predecessor, HFS Mobility Services, Inc. ("HFS"), and Baird & Warner entered into such a contractual relationship: the Strategic Alliance Agreement of October 8, 1997 ("the Agreement"). Cendant's statement, at ¶ 10; Baird & Warner's statement of uncontested facts, Dkt. No. 90 ("B&W's statement"), at ¶ 1. It includes the following relevant provision:

> Section II: Appointment as a Supplier of Services to HFS Mobility: [Baird & Warner] is appointed a supplier of services to the various HFS Mobility divisions set forth below. [Baird & Warner] will receive 80% of all available transactions in its Territories as set forth in Exhibit 1 ("Territory"). Available business shall be defined as referrals of departure (RELO) and/or corporate home finding (Destination) transferees which have not been directed to another broker by an HFS Mobility Client.[2] HFS Mobility shall make its records regarding business within [Baird & Warner's] Territory available for audit by [Baird & Warner] during normal business hours, under supervision, and subject to 30 days notice.

---

[2] This guarantee of a certain level of available business is sometimes referred to as the "deliverable business guarantee" or the "guarantee." Cendant's statement, at ¶ 23.

Baird & Warner's motion, Ex. A, at page CM 001055. This section of the Agreement goes on to identify the five business divisions[3] for which Cendant was appointing Baird & Warner as a supplier of services. The divisions, which are listed as headings for descriptions of each of them, are called "HFS Relocation Services Listings," "Destination Service Referrals," "Mobility Network Broker-To-Broker Referrals," "Asset Services," and "Affinity Services." B&W's statement, at ¶ 3.[4]

The description of the HFS Relocation Services Listings division includes the following: "HFS Relocation Services (RELO) purchases, from persons [e.g., employees] designated by its clients, residential properties which it then sells. [Baird & Warner] is hereby appointed as a listing broker for RELO."[5] Baird & Warner's motion, Ex. A, at page CM 001055. The paragraph describing the Destination Services Referrals division begins, "Destination Services (Destination) provides services to people desiring to sell a residence and/or to purchase a property, and has the capability of referring those people to professionals." *Id.*[6]

---

[3] Instead of "divisions," Cendant sometimes characterizes these groups as "categories of business" or "categories of service(s)." This is due to the dispute that is the subject of Cendant's motion for summary judgment, which is discussed below.

[4] Section I of the Agreement lists some of the divisions of the company differently: it refers to them as HFS Mobility, Destination Services, Supplier Management, Asset Services and Affinity Services. Baird & Warner's motion, Ex. A, at page CM 001055-56.

[5] For the ease of the reader only, the court notes that its understanding of the general nature of RELO services is that when a client wanted to transfer one of its employees, Cendant would buy that employee's home and keep it in its own inventory in order to sell it in the future using one of its Mobility Network brokers.

[6] Section XII of the Agreement provides, "This agreement constitutes the entire agreement and understanding between the parties concerning the subject matter of this Agreement. It may not be changed, altered or modified except by mutual agreement in writing. The parties acknowledge and agree that, upon execution and delivery of this Agreement, all previous agreements between the parties are canceled and are null and void, except that any moneys due and owing at the time shall be paid by the respective parties to the other." Baird & Warner's motion, Ex. A, at page CM 001062.

Although not described in detail in the same portion of the Agreement, the parties agree that Affinity Services include real estate advisory, brokerage and financial services, which were offered to members of participating organizations at no cost, and were intended to be a resource for members' personal and individual needs. Cendant's statement, at ¶ 20. One of the common services offered to both Affinity clients and to corporate or government clients was to assist people with moving from one location to another by referring them to real estate brokers who could assist with such a move. Cendant's statement, at ¶ 8. Section II(E) of the Agreement describes Affinity Services simply as follows: "Affinity Services (Affinity) has the opportunity to market properties on behalf of clients' members. [Baird & Warner] is hereby appointed as a listing broker for Affinity, subject to Affinity performance criteria. [Baird & Warner] agrees to pay Affinity thirty percent (30%) of the gross referred function commission received by [Baird & Warner] due to each such referral." Baird & Warner's motion, Ex. A, at page CM 001056.

Under some of the agreements that Cendant negotiated with its major corporate clients, the clients required that their employees (also known as the "transferees") be given a choice of brokers, or allowed to make their own selections, whether or not their chosen broker was a member of the Mobility Network. Cendant's statement of additional facts, Dkt. No. 110 ("Cendant's additional statement"), at ¶ 16. These contract provisions are sometimes referred to as "employee choice provisions."

Cendant classified a transaction as "client directed" and excluded it from the calculation of "available business" pursuant to Section II of the Agreement (quoted on page 2, above) in all cases where the transferee's employer had a contract with an employee choice provision and the referral went to a broker other than Baird & Warner. Cendant's additional statement, at ¶¶ 17,

22; *cf.* B&W's statement, at ¶ 12. Cendant consultants working with the transferees did not systematically document the details of each particular employee's request for an alternative broker other than noting which broker ultimately received the referral. Cendant's additional statement, at ¶ 21.[7]

Over the course of the Agreement, Cendant provided Baird & Warner with reports summarizing its compliance with the deliverable business guarantee. Out of a cumulative total of 4,814 transactions in Baird & Warner's territories, 832 were excluded from the universe of available business based on the client directed exception. B&W's statement, at ¶ 16.

## II. Summary Judgment Standard

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must look beyond the pleadings and assess the proof as presented in the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *Abdullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005).

The party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Ruffin-Thompkins* v. *Experian Info. Solutions, Inc.*, 422 F.3d 603,

---

[7] Baird & Warner implies, and Cendant does not directly deny, that in cases where a transferee of a corporate client with an employee choice provision did not specifically request a broker other than Baird & Warner, that Cendant did not refer those clients to Baird & Warner but still excluded them from its calculation of available business. *See* B&W's statement, at ¶ 12; *cf.* Cendant's additional statement, at ¶¶ 17-18, 22.

607 (7th Cir. 2005). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia* v. *Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322.

## III. Discussion

The parties agreed in Section XIV of the Agreement that it would be "construed by and under the laws of the State of Connecticut." Baird & Warner's motion, Ex. A, at page CM 001062. Connecticut's general rules regarding contract interpretation include the following:

> In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. Where the language is unambiguous, we must give the contract effect according to its terms. Where the language is ambiguous, however, we must construe those ambiguities against the drafter....

*Cantonbury Heights Condominium Ass'n, Inc*. v. *Local Land Development, LLC*, 873 A.2d 898, 904-905, 273 Conn. 724 (Conn. 2005) (citations and internal quotation marks omitted). With regard to determining whether a contract is ambiguous, the oft-cited case of *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 791 A.2d 546, 550, 259 Conn. 665, 670-71 (Conn. 2002) (citations and internal quotation marks omitted), is instructive:

> [A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. Any ambiguity in a contract must emanate from the language used by the parties. The contract must be viewed in its

6

entirety, with each provision read in light of the other provisions; and every provision must be given effect if it is possible to do so.... If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. In contrast, [a] contract is unambiguous when its language is clear and conveys a definite and precise intent. The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. Furthermore, a presumption that the language used is definitive arises when ... the contract at issue is between sophisticated parties and is commercial in nature.

*United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 791 A.2d 546, 550, 259 Conn. 665, 670-71 (Conn. 2002) (citations and internal quotation marks omitted).

## IV. Baird & Warner's motion for partial summary judgment

Baird & Warner believes that it did not receive, as it was promised in the deliverable business guarantee, 80% of all available business in its Territories, and that therefore Cendant violated the Agreement. It asks for summary judgment of liability on Counts I and II of the amended complaint.[8] It has two bases for this belief, as discussed below.

### A. The meaning of the terms "HFS Mobility Client" and "directed"

Baird & Warner first argues that the deliverable business guarantee's exception for "transferees which have [] been directed to another broker by an HFS Mobility Client" from the calculation of "available business" applies only when the corporate client itself tells Cendant to refer a transferee to a broker other than Baird & Warner. In other words, it contends that the exception does not apply when a corporate client has an agreement with Cendant requiring Cendant to honor its employees' choice of broker and an employee exercises that option to choose an alternative broker. That, according to Baird & Warner, does not constitute "direction"

---

[8] Count I alleges that Cendant referred less than 80 percent of all available "home sale referrals" to Baird & Warner. Count II alleges the same regarding "home finding referrals."

7

by an "HFS Mobility Client." The parties mutually assume that all referrals that were excepted from the calculation of available business due to their status as being client directed were based on an employee choice provision. Therefore, if Baird & Warner's interpretation is correct, Cendant necessarily violated the Agreement by excluding referrals from the calculation of "available business" that should not have been excluded.

The parties' disagreement turns on their different interpretations of both "HFS Mobility Client" and "directed." Baird & Warner argues that under the plain meaning of these terms, "HFS Mobility Client" does not include employees of corporate clients and "direction" must entail an affirmative direction from the corporate client to use a different broker. Cendant disagrees on both points. With regard to the meaning of "directed," Cendant reasons that when corporate clients negotiated for an employee choice provision in their contracts with Cendant, and a transferee exercised that choice, Cendant was required to give the referral to another broker. Cendant therefore had no ability to control which broker received these referrals and properly excluded them as being client directed.

Both parties cite to evidence supporting their respective understandings of the term "directed" and to their course of dealing, but it is not necessary to consider that evidence because the Agreement is not ambiguous on this point; there is only one reasonable interpretation of "directed" in this context. *Rund* v. *Melillo*, 772 A.2d 774, 777, 63 Conn. App. 216 (Conn. App. Ct. 2001). When a transferee exercised an option to use a broker other than Baird & Warner, Cendant was, by operation of the employee choice provision, effectively directed by the corporate client to refer the transferee to that alternative broker. This direction may have been contingent on the choice of the transferee rather than the corporate client, but nothing in the

Agreement requires it to come directly from a corporate client. The contrary interpretation would mean that there were zero client-directed referrals during the entire term of the parties' agreement. It would also hold Cendant accountable for the placement of referrals over which it had no control. For these reasons, when applying the client direction exception to the subject matter of the Agreement and considering the circumstances of the parties and the transaction, it would be unreasonable to interpret its terms to require definite direction away from Baird & Warner by a corporate client.[9]

### B. The necessity of evidence of actual direction by transferees

Baird & Warner has an alternative argument in the event that the court finds, as it has, that a transferee's choice can constitute client direction. It argues that Cendant has failed to prove that for the referrals that it excepted from available business as being client directed, the transferees actually did choose to use an alternative broker.

The parties agree that all referrals involving a contract with an employee choice provision that were not placed with Baird & Warner were classified as being client directed and excepted from the calculation of available business. If one of these referrals was placed with Baird & Warner, however, it was included in available business.

Cendant assumes, and asks Baird & Warner and the court to assume as well, that in any case involving an employee choice provision where the referral did not go to Baird & Warner, the transferee must have exercised its option to choose an alternative broker. This is the method

---

[9] Because the court has found in favor of Cendant regarding the meaning of the term "directed," it is not necessary to consider whether "HFS Mobility Client" includes the employees of corporate clients. Were the court to consider that point, however, it notes that Cendant has cited at least one piece of persuasive evidence, namely, Exhibit 6 to Cendant's additional statement, at page 5 n.1, in which counsel for Baird & Warner defines "Cendant['s] clients" as "the employees of companies with whom Cendant Mobility has contracted for the provision of services like those provided by members of the Cendant Mobility Network."

it used to classify transactions as being client-directed: if there was an employee choice provision and if the referral did not go to Baird & Warner, the transaction was directed by the client to another broker. Baird & Warner argues that this assumes too much, because the outcome does not necessarily prove its own causation.[10]

That a referral was placed with a broker other than Baird & Warner is not conclusive proof that a transferee requested that placement. Cendant's assumption ignores the possibility that a transferee with an employee choice provision did not exercise its option to use an alternative broker but that the referral was still placed with an alternative broker.[11] While this point was not clearly made by Baird & Warner in its opening motion, it is clear from Cendant's papers that it anticipated the argument and chose not to directly address it.

An absence of conclusive proof of nonliability, however, is not itself proof of liability; the court cannot conclude that Cendant necessarily did wrongly classify any referrals.[12] Baird & Warner, as the plaintiff in this breach of contract case and the summary judgment movant, has the burden to prove that there is no genuine issue of material fact that Cendant violated the Agreement. *Northrop* v. *Allstate Ins. Co.*, 720 A.2d 879, 884, 247 Conn. 242 (Conn. 1998). Baird & Warner argues that it has shown that there is no evidence supporting Cendant's position

---

[10] The parties cite evidence of their course of dealing regarding the use of this method, which the court has considered and found not to be relevant to the legal question of whether Cendant breached the Agreement by misclassifying referrals.

[11] Baird & Warner suggests that Cendant was motivated to place some of these referrals with brokers in which it had a financial interest, such as Coldwell Banker, which was one of Baird & Warner's main competitors. Baird & Warner's response, at 9-10.

[12] Baird & Warner asks the court to go even further and to presume that *all* of the client directed referrals were not correctly classified.

that it has not breached the Agreement and that the burden to demonstrate the existence of a dispute of fact should be shifted to Cendant, but its reasoning is not persuasive.

First, Baird & Warner argues that Cendant has failed to provide evidence demonstrating its clients' transferees' actual exercise of their option to select their own broker.[13] It cites Cendant's faulty method for classifying client directed referrals, already discussed above, and also an alleged deficiency in Cendant's document production.[14] Baird & Warner asked Cendant to produce copies of its referral records. Cendant proposed, instead, that Baird & Warner come to Cendant's offices in Danbury, Connecticut to review its electronic database under the supervision of one of its attorneys. Cendant told Baird & Warner that the information it was looking for, if it existed, could be found in that database, and provided Baird & Warner with one example printout of a referral file (this is the file that Baird & Warner characterizes as the only evidence of any particular client choosing an alternative broker, although it concedes that "there may yet be other [evidence]." Baird & Warner's motion, at 10, n.5.). Baird & Warner did review the database for one day. Cendant represents that it will continue to make the database available, whether to lay persons or to Baird & Warner's experts. Therefore, the evidence is available to Baird & Warner and is not exclusively within the control of Cendant in a way that justifies shifting the burden of proof.[15]

---

[13] Baird & Warner says, "the only way Cendant can avoid summary judgment is by demonstrating that material issues of fact exist as to whether any HFS Mobility Client provided the required direction. Cendant, however, has provided no such evidence."

[14] The docket reflects a contentious discovery process in this case, which has been effectively managed by Magistrate Judge Keys.

[15] *Allstate Fin. Corp.* v. *Zimmerman*, 330 F.2d 740, 744 (5th Cir. 1964), is cited for the proposition that "[w]here the burden of proof of a negative fact normally rests on one party, but the other party has peculiar knowledge or control of the evidence as to such matter, the burden rests on the latter to produce such evidence, and failing, the negative will be presumed to have been established." In this case, it is Cendant that is asked to prove a

11

Second, Baird & Warner cites Cendant's admission that Cendant consultants working with the transferees did not systematically document the details of each particular employee's request for an alternative broker other than noting which broker ultimately received the referral. Baird & Warner argues that Cendant had a duty to keep detailed records documenting each transferee's choice because not doing so would render the deliverable business guarantee and the right to audit Cendant's records illusory. That is not necessarily so, however. There are other ways to investigate Cendant's compliance with the deliverable business guarantee, such as by deposing clients or Cendant consultants. With regard to the right to audit Cendant's records, Baird & Warner had the right to review records "regarding business within [Baird & Warner's] Territory." The court cannot conclude from this that Cendant had an obligation to document the specifics of each transferee's decision in any particular way.

Because Baird & Warner has the burden of proof, it must first show that Cendant is liable for breaching the Agreement before Cendant would be required to rebut that evidence. If there is no evidence that Cendant breached the Agreement, it is Baird & Warner's obligation to find some, not Cendant's obligation to prove that none exists. Baird & Warner's motion for summary judgment of liability on Counts I and II must therefore be denied.[16]

---

negative fact: that it did not inappropriately classify any of its referrals. Additionally, as discussed above, the evidence is not peculiarly within Cendant's control. Baird & Warner also cites *Preston* v. *Keith*, 584 A.2d 439, 444 (Conn. 1991), and *Granato* v. *Benettiere*, 246 A.2d 901, 904-05, 5 Conn. Cir. Ct. 150, 155 (Conn. Cir. Ct. 1968), which are also not persuasive because each states a rule of law that only applies in determining damages.

[16] The other cases that Baird & Warner cites in support of these arguments, including *Celotex*, 477 U.S. at 325, and *Waldridge* v. *Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994), are not persuasive. *Celotex* and *Waldridge* confirm that Baird & Warner, as the moving party *and* the party with the burden of proof, cannot ask for summary judgment based only on an absence of evidence. *Celotex*, 477 U.S. at 323 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, *and on which that party will bear the burden of proof at trial*.") (emphasis added); *Waldridge*, 24 F.3d at 920, 924 (where the plaintiff, *who had the burden of proof*, failed to properly respond to the defendants' motion for summary judgment, summary judgment was properly entered against her).

## V. Cendant's motion for summary judgment

Cendant moves for summary judgment denying Count III of the amended complaint. In Count III, Baird & Warner asserts that Cendant breached the Agreement by failing to provide Baird & Warner with 80 percent of "all available Affinity Services purchases and sales." Cendant's motion is based on its argument that the plain terms of the Agreement did not provide Baird & Warner with any guaranteed level of Affinity business. Baird & Warner contends that the Agreement is ambiguous on this point and should be construed to cover at least some Affinity business. Both parties cite parol evidence that they believe supports their respective positions.

As cited above, the deliverable business guarantee includes the following provisions: "[Baird & Warner] is appointed a supplier of services to the various HFS Mobility divisions set forth below. [Baird & Warner] will receive 80% of all available transactions in its Territories as set forth in Exhibit 1 ("Territory"). Available business shall be defined as referrals of departure (RELO) and/or corporate home finding (Destination) transferees which have not been directed to another broker by an HFS Mobility Client." Below the guarantee, five divisions are listed, including "HFS Relocation Services Listings," "Destination Service Referrals," and "Affinity Services." HFS Relocation Services Listings is abbreviated as RELO and Destination Services Referrals is abbreviated as Destination. Therefore, on the surface, the guarantee unambiguously applies only to RELO and Destination business and not to Affinity Services.

Baird & Warner first argues that the Agreement is ambiguous because it uses different terms to describe its divisions and the services provided by them. In Section I, the divisions are given some different names when compared to the way they are listed in Section II. The name

13

for Affinity Services, however, does not change. Additionally, the deliverable business guarantee refers to "referrals of departure" as RELO, whereas in the subsections below RELO is the abbreviation for HFS Relocation Service Listings. Similarly, it refers to "corporate home finding" as well as Destination Service Referrals as Destination. Again, however, there is still no ambiguity in the Agreement's exclusion of the Affinity Services division from its definition of available business, because while it may be arguable that it is not clear what RELO and Destination include, there is no indication that they include Affinity.

Baird & Warner next argues that the terms in the deliverable business guarantee could just as easily be describing services as divisions of the company, and if the guarantee is referring to services, then it should include all such services, no matter from which division of the company they originate. It is undisputed that there are at least some common services performed for both the Destination and Affinity divisions, including assisting people who are moving from one location to another by referring them to real estate brokers who can assist with such a move. Based on this, Baird & Warner argues that all Destination service referrals (i.e., referrals to real estate brokers to assist with a move) should be included in the calculation of available business, no matter from which division they originated.

Although this is an interesting argument, it is not persuasive because the Agreement unambiguously declined to include Affinity Services in available business. There may be factual issues at trial regarding the proper characterization of a referral as being a Destination referral or an Affinity referral, but all Affinity referrals are properly excluded from the deliverable business guarantee. Because the court has found that the Agreement is not ambiguous on this point, it is

14

not necessary or appropriate to consider parol evidence. *Rund*, 772 A.2d at 777.[17] Cendant's motion for summary judgment on Count III must therefore be granted.

## Conclusion and Order

For the foregoing reasons, Baird & Warner's motion for partial summary judgment [# 89] is denied and Cendant's motion for summary judgment [# 92] is granted. Judgment is entered for Cendant on Count III of the amended complaint. This case will be called for status on January 22, 2008.

DATED: December 13, 2007      ENTER:

_____
JOAN HUMPHREY LEFKOW
UNITED STATES DISTRICT JUDGE

---

[17] All other arguments in the parties' papers regarding the ambiguity of the Agreement have been considered by the court and found to be not persuasive.